NiohousON, C. J.,
delivered the opinion of the Court.
In June, 1863, Lawson J. Murphy died, from violence, in Montgomery county, having ' executed his will a few days before his death. He was the owner of a large real and personal estate, leaving his wife, Sylvester J., surviving him. They had no children.
By his will, he gave all of his estate, real and personal, to his wife, during her widoAvhood. Upon the termination of her widowhood, his real estate was to be divided between Thomas J. Carney and Elizabeth Pride. His slaves, except three, were to be divided in like manner. The three slaves excepted from division, and $5,000,- were given absolutely to liis wife. He provided for certain charges on the bequests and devisees made to Thos. J. Carney and Elizabeth Pride, which are not material to be noticed. He appointed his wife executrix, and desired Holcott Pride to give her any assistance she might require.
*549 After his death, the widow of testatrix remained in possession of all the property, and managed and controlled the same, until after the close of the war, when she renounced as executrix, and complainant was appointed administrator, with the will annexed. Up to that time, the will had not been proven, nor had she qualified as executrix.
Upon his appointment as administrator, complainant filed his bill against her for an account. She answered, submitting a full statement of her management of the estate, and agreeing to an account. The Chancellor ordered an account, and after taking proof, the Clerk and Master made his report.
The questions for our determination arise upon exceptions filed to the report. Complainant filed five exceptions: 1st, To the sum of §550 allowed for attorney’s fee, in the prosecution of the supposed murderer of testator. 2nd, To §1,000 to Bowling and Estes, allowed for arresting the supposed murderer. 3rd, To §650 for building house on the land for overseer. 4th, For the compensation of §1,500 yearly, for taking care of the estate. 5th, Because defendant was not charged with the crop growing when her husband died.
Defendant filed one exception to the report: Because she was charged with §1,000 for the hire of negroes.
The Chancellor disallowed all the exceptions of complainant, except the fourth, and that was modified so as to allow §1,000 a year for compensation, instead of §1,500. He allowed the exception of defendant as to the charge of §1,000 for negro hire. With these modifications, the re *550 port was confirmed, and a decree made accordingly, from which complainant appeals to this court.
Before we proceed to examine and pass upon the exceptions, it is essential that we settle definitely the character in which defendant held, controlled and managed the estate of her deceased husband. This is necessary, that we may deduce the proper principle by which she is to be held to account.
We have seen that defendant was nominated in the will as executrix, but that the will was not proven until the termination of the war; and we know, judicially, as well as by the proof in the record, that civil law was suspended in Montgomery county; that the courts of 'justice were closed; and that military authority prevailed, at the date of testator’s death, and from that time until the war was terminated. It is clear, therefore, that defendant did not hold and manage the estate as executrix, and that it was impracticable for her to have been invested with the rightful authority of executrix during that period.
At the same time, it is equally clear, that she exercised the same control over the property, and performed, in some respects, the same acts in managing the estate, that she could and would have performed if she had been regularly qualified as executrix. It follows, that she must have acted either as executrix de son tort, or as trustee or bailee for those upon whom the title to the estate passed upon the death of her husband, and for those who might be entitled as legatees and devisees, when the will should be proven. It can not be questioned, that, if a stranger had intruded into the estate, and performed the acts per *551 formed by her, the law would have held him to be an in-termeddler, and liable to the strict accountability of an executor of his own wrong. Williams on Executors, p. 225, says: “If one, who is neither executor nor administrator, intermeddles with the goods of the deceased, or does any other act characteristic of the office of executor, he thereby makes himself an executor of his own wrong.” But does it follow, that if a person who is nominated as executor assumes to take charge of the estate before his qualification, he thereby becomes an executor of his own wrong? It is well settled that by the English law, the probate of a will is not the foundation of the executor’s title, but it is merely operative as the authenticated evidence of his title. He derives all of his interest from the will itself; and the property of the deceased vests in him from the moment of the testator’s death. Hence the probate, when produced, is said to have relation to the time of the testator’s death. It was, therefore, held that the executor, before he proved the will in a spiritual court, might do almost all the acts which were incident to his office: 1 Wms. Exrs., 256; 4 Bac. Abr., 63.
It follows, that defendant was not an intermeddler, in taking charge of and managing her husband’s estate, unless the law, which we derived from England, has been changed in this particular by statute. By Section 2201 of the Code, it is provided, that “no person shall presume to enter upon the administration of any deceased person’s estate, until he has obtained letters of administration, or letters testamentary.” In the case of Fay v. Reager, 2 Sneed, 203, it is said, that “it is well settled under our law, that until after his qualification, an execu *552 tor stands upon the same footing with an administrator; and that until he has given bond, and been duly qualified, as required by law, the goods and chattels of the deceased testator remain íd custody of the laAV, and he can do no valid act relating to the administration thereof.”
Upon these authorities, it would seem that the law, as laid down in Williams on Executors, and in Bacon’s Abridgment, is so far changed, that a person named as executor can not perform any valid act relating to the administration of the goods and chattels of the deceased, before his qualification; and until he has qualified and given bond, and taken out letters testamentary, the goods and chattels remain in the custody of the law. The true meaning of which is, that until the qualification of the executor, the title to the goods and chattels do not so vest in him, as to be subject to be reached by suit or attachment. It follows, that under our law, upon the death of an intestate or testator, the title to the property passes to the distributees and heirs, and there remains until administration is granted, or until the will is proven and the executor qualified; but in the meantime, the property itself is in the custody of the law. Who the custodian is in such cases of intestacy, the law expressly provides. In section 2284 of the Code, it is enacted, that “when a man shall die intestate, leaving a widow, until letters of administration are granted, she may take the personal property into her possession,” etc. Although this section, in terms, applies only to persons dying intestate, yet under the authority of Fay v. Reager, and according to its spirit, we may fairly construe it as applicable to a person dying testate, until the will is proven, *553 and as, until that time, the property of a testator, like that of an intestate, is in the custody of the law. Or, perhaps more properly, we should say that section 2201 only forbids any person nominated as executor, to enter upon his duties as such before qualification; but that in other respects, the common law applicable to the subject, is unchanged. Hence, that an executor before qualification may, by virtue of his nomination, take possession of the deceased’s estate, and hold it for purposes of protection, preservation and management, during the interval that must elapse before probate and qualification. What acts he may do as such temporary custodian, or trustee, or bailee, must depend upon the character and situation of the estate, and the probable time to elapse, in view of all the circumstances, before probate and qualification can legally take place.
It follows, that, under either view of the law, defendant, as widow or as nominated executrix of her deceased husband, remained legally in the custody and management of the estate; and that while her leading duty as such custodian or bailee was the preservation and protection of the estate, yet, that in view of the prevalence of war, the suspension of civil law, and the probable continuance of this state of things,- she was not guilty of intermeddling, so as to become liable as an executor cle son tort, in continuing to keep the property together, in cultivating the lands, in selling crops, and in doing the usual acts of a qualified executor. From the necessity of the case, being rightfully in possession, being the nominated executrix, and having an inchoate right, under the will, to a temporary or conditional interest in the pro *554 perty, sbe would have failed in her duty to the ultimate beneficiaries, if she had abandoned the estate, and failed to do all in her power to preserve and protect it, until civil law should revive and relieve her of the trust.
Her execution of the trust, therefore, must be viewed as that of a trusl.ee, or special bailee, acting in the discharge of rightful authority, and not that of an officious intruder into the estate. If, in the execution of the trust, the proof shows that she acted with integrity and fidelity, accompanied with proper diligence, she has a right to that liberal protection, which a court of equity uniformly extends to faithful trustees. She has a right, if she shows herself to have been faithful and diligent; and that she has, is fully established by the proof; to have her conduct weighed and judged in the light of the obstacles, difficulties, dangers, and exigencies of her situation; and to demand that measure of justice and equity, to which fidelity and diligence, under the peculiar circumstances, entitle her.
Nor is the defendant entitled to a less measure of equitable protection and relief, if the estate in her custody was not all preserved and saved from loss, provided the loss was inevitable and despite her reasonable efforts to protect and preserve it. Nor is she to have a less measure of protective relief, because she had a common interest with the other beneficiaries in remainder, in the preservation and protection of the estate from the destruction which threatened it.
With these general rules for our government, we now proceed to the examination of the several exceptions in issue before us.
*555 The first two exceptions relate to the expenditure of money, for attorney’s services, for prosecuting the alleged murderer of defendant’s husband, and for services in procuring his arrest. The objection is not to the amonnt of the expenditure, nor that his prosecution was not right and proper, but to any allowance whatever.
We learn from the record, that the husband of defendant was the owner of a large' estate, consisting of one thousand five hundred acres of land, about thirty-six slaves, and a large amount of personal property. lie came to his death by violence, but under what particular circumstances, is not disclosed in the record. His widow naturally felt it to be her duty, to have the supposed murderer arrested and tried. He had made his escape. There were none of the means provided by law, for his arrest and punishment, within her reach. These had all been suoerseded and suspended, by the prevalence of military authority. In this state of things, she employed two men to go in pursuit and make the arrest. They succeeded, and the supposed murderer was brought to trial before the military authority. She employed an attorney to prosecute. For the services so rendered, in arresting and prosecuting the supposed murderer of her husband, she paid $1,550 out of the assets of the estate.
The question now is, shall she be allowed for this expenditure out of the estate, or shall she account for it out of her legacy of $5,000? Shall the loss of this amount be borne by her, or by the legatees, who are entitled to the property after the termination of her limited estate ?
*556 It is to be observed, that this is not an application of the trustee to expend trust money for bringing a supposed murderer to trial, but it is an application of the trustee to be relieved of personal liability, after the expenditure had been made. It is conceded that there was no law which specially authorized the defendant to make such an expenditure, but after the expenditure has been made, it is contended that a court of equity can look to all the circumstances, examine the motive for the expenditure, ascertain whether the expenditure was for the personal benefit of the trustee; whether it was intended to advance an end alike beneficial to the beneficiaries and the trustee, and whether the end sought could not have been secured without making the expenditures. We think, in determining an appeal so directly made to the discretion of a court of conscience, these are legitimate inquiries to be considered. The proof shows that the expenditure was made to accomplish a proper object; that it was made without direct authority of law, but not in violation of law, because there was no law which could be appealed to; that the supposed offender could be brought to justice by no other available means; that the expenditure was not made for personal profit or benefit of the defendant; but that it was made in good faith, and for an object which defendant had reason to believe would be approved and sanctioned by all interested in the fund used and in the accomplishment of the object for which it was expended. It is conceded in the argument, that, if the expenditure had been made in a time when civil law was prevailing, the stern rules of that law would for *557 bid its allowance. Nor have counsel been able to find any case, occurring under similar circumstances, which can serve as a precedent. This was scarcely to be expected. The case before us is so novel that it must itself become a precedent. We suppose the like has hardly before happened. A man of wealth and standing has died by violence, leaving a widow and no children, with no law in force for the arrest, prosecution and punishment of the offender, the widow being nominated as the executrix, the body of the estate devised ultimately to others; the widow and executrix in the discharge of what she esteems her duty to the public, to the memory of her husband, to the supposed wishes of her husband's legatees and de-visees, has expended a small amount of the assets in her hands, and when law is restored, and she asks to be credited with the expenditure made when there was no law, she is met with the objection, that it was the money in expectancy of the legatees and devisees expended; it was used without law, and the loss must be her own. But while no precedent can be found sustaining the allowance referred to, it is equally true that no precedent is found forbidding the allowance. Wc must, therefore, decide the question by rules of law, which were suspended and in abeyance when the expenditure was made, or we determine it according to the natural rules of right, justice and equity, in view of the surrounding circumstances when the expenditure was made. Wc feel that our duty can only be discharged by following the dictates of right, justice, and equity, as they are clearly indicated by the peculiar circumstances of the case. If, as *558 was held in North Carolina, an executor was bound to expend (he money of his trustee in defending a slave arrested and tried for felony, though the trial resulted in his conviction and execution: 5 Jones’ N. C. Eq. R., 4. If, as laid down in Redfield on Wills, “the amount which an executor may have allowed for general expenses, has always been based upon the consideration of what was reasonable, under all the circumstances:” 2 Redfield, 224; if expenditures can be lawfully made, in erecting monuments to the memory and virtues of deceased testators, which is constantly done — if expenditures like these are allowable, in the sound discretion of the courts, in view of all the circumstances, in times when the laws are in full force, we think that they furnish some light for our guidance in the extraordinary case before us. Under all the circumstances, we can not hold that the defendant should be made responsible for the expenditure; and we affirm the action of the Chancellor in- disallowing the first two exceptions of complainant.
The third exception of complainant relates to the allowance of $650 to defendant, for building an overseer’s house. If the proof had shown that this expenditure was necessary for the preservation and protection of the estate, it would have been properly allowable. But we are unable to see, from the proof, that such a necessity existed; nor do we understand, that the tenant of a temporary estate has a right to make improvements thereon, at the expense of the remaindermen, unless such expenditure is necessary for the preservation of *559 tbe estate. We, therefore, think this exception was well taken by complainant, and reverse the action of the Chancellor thereon.
The fourth exception of complainant relates to the compensation of $1,500 a year, allowed to defendant by the Clerk and Master, for her services in taking care of the property for about two years.
The Chancellor modified the allowance, and reduced it $1,000 a year, Upon examination of the proof, which is full on this point, we find that the weight of the evidence entirely supports the report of the Clerk and Master; nor do we see in the record any ground on which the preponderance of the proof in favor of the allowance of $1,500 a year can be disregarded by us. We know of no other ground upon which to disturb the report, but the proof in the cause.
But it is insisted for complainant, that defendant is entitled to no allowance for her services. It is said she performed the services under no contract, either express or implied. We have already determined, that she held the estate after the death of her husband, as the custodian provided by law and by her designation as executor by her husband’s will. Being in possession, as his widow, at his death, and being nominated by him as executrix, it was her duty both to the heirs, in the event the will should never be proven, and to the legatees and devisees, in the event the will should be proven, to continue in possession, and to protect and preserve the property as best she could.
For the execution of this trust, the law implies that she should have a quantum m&ruit compensation for her *560 services. It can not be said that she was preserving and protecting the property for herself alone. Until the will should be proven, the title was in the heirs and distributees of her husband. She could not know that the will would ever be proved and established. And if it should be, she knew that she only had a limited interest, and that upon its termination, the entire estate of lands and slaves were to pass to the legatees and devisees specified. She saw that her interest in the estate, in either view, was small compared to that of the heirs or devisees and legatees. The proof is overwhelming as to the meritorious character of her claim for compensation. Nor is it any objection to its allowance, that much of the personal property was lost by thefts and robbery, and other unavoidable misfortunes; or that the slaves were impressed by military authority, or absconded of their own volition, or that they were all ultimately lost by the results of the war. The difficulties and troubles only increased the responsibility of the trust, and called for increased efforts to save the property. The proof shows that she did all it was possible for her to do, in the discharge of the trust, and for her services, we are satisfied to reverse the action of the Chancellor, in reducing her compensation, and to confirm the amount reported by the Clerk and Master.
The fifth exception relates to the failure of the Clerk and Master to charge defendant with the crop growing at the death of her husband. We do not understand that this exception is relied on here,[1] nor do we see that *561 it was passed upon by the Chancellor. The exception was not well taken, and is disallowed.
The only exception filed by defendant has relation to the charge made against her of $1,000 for the hire of the negroes. There are several grounds upon which this exception was well taken. Defendant had possession of the slaves, as of all the other property, not in her own wrong, but only as custodian, and therefore was not responsible for hire. The title to the slaves, upon the death of testator, passed to his distributees and not to his executrix. Until the probate of the will, their hire would belong to the distributees. But upon the probate of the will the right to the hire, from the death of the husband, belonged, by the terms of the will, to the defendant. It follows that complainant had no right to hold defendant to account for the hire of the negroes. Nor do we think the creditors of the testator, if they were before the court, could establish any claim to the hire of the negroes, accruing before the administrator with the will annexed, took the steps prescribed by law to subject the slaves to the payment of the debts. Down to that time, the hire of slaves, like the rent of lands, belongs to the distributees and heirs. This exception of defendant having been allowed by the Chancellor, we affirm his action thereon.
"With the modifications indicated, the decree of the Chancellor will be affirmed with costs.

 See Mr. Bailey’s Brief. Ante, p. 547.